Case No. 22-1595, Center for Biological Diversity et al., EFELENCE v. U.S. International Development Finance Corp. Mr. Snape for EFELENCE, Mr. Crown for EFELE. Good morning. Good morning. May I please report? My name is William Snape, Counsel for EFELENCE Environmental Advocacy Organizations. This case is about the Sunshine Act. It's about a new agency called the U.S. International Development Finance Corporation created by Congress in 2018. But this case is really about one person with one job that has different tasks at one agency. This one person, the Executive Director of the DFC, must be counted as the fifth member of the board for purposes of Sunshine Act compliance for two fundamental reasons. First, the text supports such a reading. And secondly, precedent in this court that both parties have discussed a lot, Simons, makes it clear that not only is this such position the president is nominating in the Senate confirming for, but at the same agency, repeatedly in Simons, this court talked about ex officio as being from other agencies. We believe it's literally impossible for the Executive Director of the same agency of which the job description includes being on the board to be ex officio of his own agency. But let's go back to the text, though. You said that that's clear. How so? Because under 22 U.S.C. Section 9613A, structure of the corporation, you have there shall be in the corporation a board of directors. But then it says, comma, a chief executive officer. Then we go further down to the membership of the board, and then it indicates the board shall consist of the chief executive officer. But it does not include other officers that it indicated in the structure of the corporation. Your Honor, the way we read that statute is that the executive director is introduced in the subsection that you mentioned. And then when the board is discussed, the board is separated into three categories. Two of the three categories the parties have no disagreement on. One category are clearly cabinet officials from other agencies. Those are four individuals. Another category in that subsection are those that are in private practice or private industry. Those are, we don't have a disagreement on that. But the executive director has its own subsection line, which we argue makes it significant, particularly because this agency's predecessor agency, the Overseas Private Investment Corporation, had complied with the Sunshine Act. And there was no indication in the Build Act at all that Congress wanted to change course. In fact, in the Sunshine Act, excuse me, in the Build Act, Congress explicitly said that FACA, the Federal Advisory Committee Act, was not going to apply. They didn't have that similar provision about the Sunshine Act. They were silent. But we also don't have a direct specific language appointing the CEO to the corporation versus appointing the CEO to the board. Say that again, Your Honor. There's not a specific acknowledgment as to whether or not the CEO was appointed directly to the corporation or appointed specifically to the board. I agree that Congress could have been slightly more clear, but when you look at that section as a whole, when you look at the executive directory in its own subsection, not with the other two categories, when the job description that Congress created for this position includes board membership, this is a very common practice. And, in fact, it's exactly what the Export-Import Bank does. And, again, I refer you back to Simons where the court made a big deal about how ex officio meant from other agencies, not from the same agency. You mentioned that the Build Act didn't say that the Sunshine Act doesn't apply, whereas it was explicit that FACA doesn't apply. However, there's less clear, but there's some implication in the openness provisions of the Build Act. For example, 9613B1C directing that the board of directors develop policy with respect to consultations, hearings, other forms of engagement. And so why shouldn't we read that as leaning against your position, that there was consciousness about the need for openness to public input, but it was provided for differently in the Build Act rather than through the Sunshine Act? Your Honor, two related reasons to answer your question. The first is that OPIC, the predecessor agency, had almost the same identical language in its organic statute, and it still complied with the Sunshine Act. The second reason is when you look at the text itself within the Build Act, it's really setting a minimum number of meetings. It's not talking about how those meetings will proceed. The Sunshine Act doesn't say you have to have a certain number of meetings. It just says when you do have a meeting, there has to be sunshine. So this, I think, was Congress setting a floor for the minimum number of meetings. It doesn't say at least two hearings. This is at least two public hearings, and there'd be no point to that word public being there if they were already required to be public by the Sunshine Act. But they didn't have to have a number of meetings. No, I'm asking about the word public. If under your reading that it was a floor on the number of hearings, they would just say at least two hearings a year, but they said at least two public hearings. And that word public would be doing no work if the Sunshine Act already applied and required it. Thank you, Your Honor. The Sunshine Act is more than just about openness and publicness. It's about that there will be transcripts of the meetings, that if the meeting decides there'll be— No, but it's part of—one of the things that's required by the Sunshine Act is open meetings. And you wouldn't need to say public if they were already required by the Sunshine Act to be open. That's my question. I know it may require other things, but I'm talking about the word public and whether it does any work under your version. No, I see your point, Your Honor, but I think that because OPIC had a very similar provision and still complied with the Sunshine Act, and because the CEO is a very unique individual in this corporation, we don't read it that way. I do, indeed, see the point. But, again, the Sunshine Act requires other things besides just it being in public. And I think if Congress had wanted to retreat from that, they would have been more explicit. The Supreme Court, tangentially—I agree these cases aren't directly on point—has said that there should not be repeals by implication. The Morton v. Mancari case, the railroad group— This isn't a—no one says this is a repeal by implication. This is a repeal by counting. It's not even a repeal. It's a whole new statute, so it's not a repeal. It just adds up differently in the government's view. I understand that, Your Honor. Our point is that Congress didn't want this agency, for the first time ever, to not comply with the Sunshine Act. It would have said so explicitly, especially when it had a FACA provision saying they don't have to comply with FACA. Are there other statutes that have—where the—assume the government's counting here for this purpose. So other statutes where an agency or an entity has been created or recreated, as in this context, and the numbers don't add up to Sunshine Act under one reading, that there are other statutes where Congress has taken the extra step to clarify by saying the Sunshine Act will not apply. The best analogy is the Export-Import Bank, and it's relevant for two reasons. The first is that the Export-Import Bank has officials that are identified by the statute as being officials and officers of the corporation, but they're also board members at the same time. In fact, it's more than just one for the Export-Import Bank. And when the Export-Import Bank was reauthorized one year later, after the Bill Act 2019, and the Ex-Im Act does comply with the Sunshine Act, Congress was again silent with the Export-Import Bank. There was no provision to reauthorize it. My question is, is there any statute where Congress has said the Sunshine Act will not apply? I am not aware of any statute where Congress has explicitly said the Sunshine Act will not apply. So maybe they speak through the design of the organization. The only— Which you can't really do with the Act. The design of the organization will put you in. But here, the design of the organization is in this majority counting. It takes you out, so they don't feel a need to say it in the majority. If the design of the entity doesn't trigger the Sunshine Act, it sounds like Congress doesn't feel obliged. The only corollary is not exactly answering your question, but it's relevant, is that in the Neighborhood Reinvestment Corporation, Congress said that the Sunshine Act will apply. But we argue the reason why Congress did it there was because all of the board members were exactly like the Chrysler board situation in Simons. And so Congress wanted that particular agency to comply with it. But I think that's fundamentally different here, where the CEO is the one. And I think we need to look not at Judge Wall's dissent, because I think she was in the wrong on that decision. But her idea that—and the majority—this is where the majority and Judge Wall agree, that if it's from another agency, that's ex officio, but not from the same—they talk at least five to eight times. They use that verbiage in Simons, and I think that really is key. That's what the facts were there. So I take your point that it's a little different here. But when I look at the Sunshine Act, it uses language, you know, a majority of whom are appointed to such position by the president with the advice and consent of the Senate. Appointed to such position by the president with the advice and consent of the Senate. That's a pretty established process under our constitutional order, and we know what it means when the president appoints somebody to a position. The president identifies that position so that the Senate can offer its advice and consent. And so the Senate—the president specifies what position is being filled. The Senate votes, and the Senate records reflect what position is being filled. For the CEO in this case, the Senate records reflect that Mr. Nathan was confirmed to the position, the position of chief executive officer. And so he was not appointed to the board by the president. He was appointed to the position of chief executive officer. He was not confirmed to the board. Board members are appointed to the board and confirmed in the Senate records to the board. And so I'm a little concerned about this. This is pretty tried and true traditional established meaning here, and it's a formalized process, a regularized process about what a presidential appointment to a position means, and it means a specific position and confirmation. And I'm concerned about—tell me why I shouldn't be—something that would say, well, when the president says I'm appointing you CEO, he's also appointing you to another position that separately requires Senate confirmation. When the Senate, in its official record, says we have confirmed you to X spot, courts have the authority to say that they actually confirmed you to X spot and Y spot. How can that be proper? So, Your Honor, I understand that point, and, of course, that is what the Justice Department is arguing here. But I think the fact that the CEO position and the board position are the same person, that's part of the same job, in the same section of the statute, we read it differently. And one other fact that I think is relevant, OK, the predecessor, along with Export Improvement, were among the original 47 that the Simons talks about. That was very—that original 47 agencies that were bound by the Sunshine Act was a very important list. And Congress was aware of that list, very much aware of that list, during when the Sunshine Act was passed. It's in the legislative history. And for Congress now to step back and say that an agency that's now more powerful is going to spend more money, is going to be more secretive, it just—we don't think hands of construction allow—that isn't the most logical reading of the statute. Go ahead. What I'm concerned about is that your position is conflating the position to which someone is appointed with their job duties. And that is— No, no, but, I mean, there's definitely a job duty to go serve on the board, just like it's a job duty to be subject to the direction of the board. Those are job duties. But we don't normally—presidents don't appoint people to their job duties. They appoint them to a legislatively, constitutionally selected position. And then the job duties flow from it. I understand your point, Ron. We think the spirit and purpose of the Sunshine Act and the Build Act itself support the idea that Congress would have been explicit but wanted to change course. And that this is, as you know, unlike the Secretary of Treasury, the Secretary of State, who have many responsibilities. What's a DFC is not necessarily a major responsibility for the D. A DFC CEO, that agency is his whole life. It's the board position, the CEO position, are the same person, the same position, doing day-to-day work. Let me just circle back to the question that I had asked earlier. And I think we got—we skipped quickly to the provision 9613C, which requires two public hearings. But there's also, I noticed separately, 9613B1C, which is a little bit broader about openness. It requires the board to develop a policy with respect to consultations, hearings, and other forms of engagement in order to provide for meaningful public participation, which seems to me to authorize the board to do Sunshine Act-like regulatory measures. And when you said that there was a predecessor provision in the OPEC authorizing legislation, were you referring to a predecessor provision to that or to the one public meeting provision that's parallel to the other openness provision? You know, I'd have to double-check on that. When I looked at those two statutes, they were very similar, those provisions. I just would love a cite on the predecessor provision to the 9613B1C as distinct from 9613C. We will look at that when the Justice Department is up. And I guess I want to end when my time is up. Let me before you wrap up, because you may want to wrap up at the end. I had a question about the prejudice about your notice-and-comment rulemaking argument. You argue in your brief that what you would have liked to have an opportunity to do, essentially, is make the arguments you're making to us in the notice-and-comment rulemaking process to potentially change the regulatory approach to this, that they wouldn't have repealed this Internet regulations. That's right? It is right, Ron. It's a backup argument. We think that we can prevail on the merits here. But yes, the fact that there had never been a situation teed up like this, where the decision was this, it should have had more. Right. But other than that legal argument, is there any other prejudice that you've asserted to the failure to have notice-and-comment rulemaking? Well, in addition related to that, it was no administrative record. At no point in time did the agency really give a rationale for why it, one week when it said it was going to comply with the Sunshine Act, that later, literally a week later, said it wasn't going to comply. And, in fact, the Sunshine Act regulations were the only regulations the new agency didn't carry over from the old agency, which we think is striking. And there's no indication in the Build Act that that should have happened. But you haven't made any claim, for example, that under this alternative provision of the Build Act, as the agency was rescinding its Sunshine Act regulation, it might at least have developed some kind of alternative sunshine regime, you know, sunshine light under its Build Act authority. That isn't a claim that you've made in this case, as I read your brief. No. And I do regret to say that another answer is the amicus brief, the accountability mechanism, which would be another sunshine-like provision in the Build Act, is not as powerful a mechanism as the amicus brief points out, without the availability of information and transcripts and minutes that the Sunshine Act provides. So, actually, the public transparency mechanisms are made less effective without Sunshine Act upon. And that was the assumption that all of our standing deference made, including the amicus brief. What deference should we get to the DLJ legal opinions about DFC not being subject to DLJ? So the only OLC opinion that is relevant is about the Millennium Corporation Challenge, which was a different statute and was set up differently, and that was never challenged in court. That was the first time that the OLC had ever opined on the CEO. There are reasons to not think that that OLC opinion is correct. It certainly, I don't think, should receive deference in this case, where there's a different statute and a different underlying. Why is it the only one? There's an OLC opinion in this very case, in this very situation, with this very statute. I don't know why you're saying the Millennium Copyright one is the only relevant one. The only other agency I'm aware of that has this setup, where the CEO is the deciding vote like this, is the Millennium Corporation. There's another OLC opinion on exactly this office. It was, and it was almost verbatim from the previous OLC opinion. They took all of the opinion from the MCC and just applied it to this case somewhat in a cookie cutter fashion. I can just follow up real quickly on Judge Pillard's question. Has the corporation yet developed its B1C public available policy? It has, but there have, as our declarations point out, that it has not worked perfectly so far. There have been some issues. Did they do that through notice and comment rulemaking, or how did they do that? I'm not sure how they do that. I think sometimes information is posted on the website. I'm not sure exactly how. You haven't brought any challenge to the policy they have developed. We're not challenging that policy. No, we're only focusing on the Sunshine Act compliance. Any questions? Thank you very much for your time. We'll give you a couple minutes, everybody. Good morning. May I please record Nicholas Brown? You might bring it up a little more. It actually affects the microphones and the recording. How's that? It's better. Thank you. Let me start over if I may. Nicholas Brown for the DFC. If I may, I think we agree with our friends that this case really is about one person. But the relevant question is whether the CEO is appointed directly to the board or serves on the board by virtue of a distinct office. And we think the district court got it exactly right. The CEO serves by virtue of a distinct office. And that conclusion really is consistent with the statutory text and structure with this court's decision in Simon's and OLC's consistent application of both. If I could start with the text and the structure, the Sunshine Act has the key language appointed to such position. And I think my friend's position here today and in the district court briefing would read those words out of the statute. And I want to get back to Simon's opinion itself. At pages 241 and 42, this court rejected the exact same interpretation that my friends are repeating today. The court rejected the suggestion, and I'm quoting here, that the phrase to such position could be read to include presidential appointment to positions other than the collegial body itself. And I know that the Simon's opinion referred occasionally to serving ex officio and it said serving in the agency. But the logic of the opinion itself doesn't turn on that. The foreholding and the passage I just read, it's really are you presidentially nominated and senate confirmed to the board position or to some other government office? I'm really interested in having you just step back and help us appreciate the policy judgment that is implicit in Congress's decision to define members of a collegial body as either ex officio or directly appointed. It's just a little hard to appreciate what as a sort of functional matter rides on that. I mean, I completely hear your more formal language argument, and that obviously is paramount. But just to sort of help us appreciate the logic of it. I think two responses, and I want to make sure I understand the question. I take the question, Judge Miller, to be about the Build Act, or excuse me, the Sunshine Act. The Sunshine Act and, yeah, such position and why this is really asking you to defend the reasoning of our Simon's decision and why it would make sense to apply here and why that all seems consistent with a coherent interest that Congress would be pursuing. Okay, perfect. Those are the two points I wanted to make. One about the Sunshine Act and one about the Build Act specifically coming forward in time. I think in terms of the Sunshine Act, this is the exact question that the majority assignments grappled with. And it said, we've looked at the statutory legislative history. Don't really see an indication one way or another. There was, of course, the one representative statement, the representative who said, I gave the example that I think would apply here. And what the court did was it said, well, when we've got legislative history, that's silent. It's really precarious business to try to start injecting language into the statute. So we're going to stick to the plain meaning. But the second point I want to make is, I think, with the Build Act, what Congress was doing was intentional and perfectly reasonable because some of the questions with my friend earlier this morning, I think, showed Congress created an alternative scheme as I think the reference was Sunshine Act light. I think I would describe it as perhaps Sunshine Act plus, because there is a carefully calibrated scheme that requires the DFC to work with stakeholders, not unlike my friends, to create the transparency and accountability mechanisms. And that's directly in the Build Act itself. And I think if we actually look at what Congress was doing, I want to make one clarification. It's not just that there was one predecessor entity involved here. There was both OPIC and the DCA, the Development Credit Authority, which was part of USAID, which, of course, was not subject to the Sunshine Act because there we have a single administrator who heads the agency. So I think what Congress is doing is it has two entities that it's combining. It's creating a new entity, and it creates a different scheme that has all sorts of accountability and transparency requirements. Let me just follow up on Judge Millett's question of your colleague on the other side. Has the DFC board released a general policy complying with B1C? And if so, did it do so by notice and comment rulemaking? The answer to that first part of the question is yes. I think we identified the permalinks at pages 6 and 7 of the red brief. I don't believe it was done through notice and comment. I will back up and say, of course, there hasn't been an APA challenge or even a Sunshine Act challenge brought by the plaintiffs here with respect to that. But I could list off some of the things that the DFC has done. And this was as required under Section 9613B and 9614, which, of course, require the DFC to create transparency and accountability mechanisms. So, for example, they have public hearings and notices. And in this respect, if we actually line up the differences between the Sunshine Act regime and what we have under the Build Act, the Build Act actually provides a lot more transparency and accountability if you just stack them up. So in terms of public hearings, the DFC provides more access than OPIC did. For example, there are two public hearings that are required by statute that allow public access to the board. Whereas, by contrast, OPIC had only one public hearing. And then, of course, you would have the Sunshine Act notice and meeting for a board meeting under the OPIC regime. But I want to make clear, and I know the amicus brief and my friend today mentioned the transcripts or minutes that would be provided. Of course, the Sunshine Act had a list of 10 exemptions from public disclosure. So what would happen on the ground with respect to OPIC board meetings is you would have the two meetings, or you would have the meetings, but they would last only about 15 minutes when they were in the public session. And what would happen during that public session is you would have, for example, the president might have a message. There would be tributes to people within the entity that were retiring or leaving service. And then there would be an adoption and recognition of the prior open portion minutes from the last board meeting. But everything else would be closed. At that point, they would remove public access. And because one of the exemptions would invariably apply very often, it would be the exemption for confidential information or proprietary business information. All of that would be closed. And because the exemption in the Sunshine Act matches the exemption in FOIA, those transcripts and meetings and minutes would remain outside of public view. So I think getting back to the policy or purpose of this argument is that my friends are relying on here instead of the text. It actually cuts the other way. The bill that provides more transparency. I have a question for you about the harmless error analysis that the district court relied on. And people haven't really focused very much on the notice and comment rulemaking claim, but it's a separate claim here. And I think even if you're right on the reading of the statute, there's a question whether the failure to proceed under notice and comment rulemaking was erroneous. And we're very skeptical in this court of harmless errors applied to a claim that a rule was legislative and should have been subjected to notice and comment rulemaking. And in particular here, you know, you note, I think, very astutely in your brief that there is potential that plaintiffs might, for example, have used notice and comment to persuade the DFC to voluntarily adopt Sunshine Act-like provisions. And you don't assert that they would lack the authority, that the board would lack the authority to do that. So it seems different from, I think, the only decision that you cite where we have felt the lack of notice and comment rulemaking to be harmless. I want to unpack that a little bit. I think the first thing I would say is that's not exactly the claim, at least as I understand it. Both as reflected today during the call earlier between the bench and my friend, and as the district court understood it. But I will say, I think what we were dealing with here, with the rescission of the Sunshine Act regulations here, was there was a formal request for a binding opinion from the DFC to OLC on a pure legal question. OLC answered the pure legal question and said you are not an agency under the Sunshine Act. And at that point, I think the agency made, based on the legal determination, and it was treating the OLC opinion that it received as authoritative, said we're not subject to the Sunshine Act. So we're going to remove the regulations that impose the Sunshine Act requirements on us. But you acknowledge that doesn't answer the question, whether that rescission has to be by notice and comment. Well, I think at that point, this might get to the Hatson case that we cited. I think the way Hatson dealt with the same situation, because there what happened, just as here, there was a change in statutory scheme, and the old regulations were rendered obsolete. And there was an argument, well, even if the old regulations were obsolete, you should have gone through notice and comment to have other stakeholders offer reasons why you might want to do this voluntarily. And what Hatson said there was, well, that's not an APA notice and comment. That's actually a 553 petition to open a ruling. That's what you would have to do. And I think as we pointed out, that's what should be the results here. And of course, I don't want to say what would be the merits or the right outcome in that case. There might be race judicata or other things that would attach. But I think that is a proper mechanism there. It's a petition to open new rulemaking, not to change anything on appeal to amend the claim in the complaint. And I think just to put a finer point on that as well, Judge Pillard, I think when we are talking about the regulations here, if you actually look at the Sunshine Act regulations that OPIC was operating under the original rulemaking, the only authority it cited was the Sunshine Act. So, once we know that the Sunshine Act doesn't apply as a matter of law, there was no authority for regulations to stay in place. And I think that's, again, that maps pretty cleanly into the situation that was present in the Hansen case. If I could just go back to the text. This is the final point I want to make. And just to wrap up respectfully what my friend said, the CEO is a different position from board member. That's borne out in the text. Not only do we have subsection B2A3, which identifies the four board members who are directly appointed. The CEO, that appointment and the description of the position of CEO appears in an entirely different subsection. That's in subsection D. And it even says that the CEO shall report to and be under the direct authority of the board. This sort of gets back to the original question I asked you about the policy behind the distinctions between ex officio and directly to the board. And you did a very good job of answering that. But I would sort of step back even further. Like, why would somebody who is being appointed to the very agency, why would we consider that to be ex officio in the relevant sense? Does it have to do with degree of political accountability? Does it have to do with specialization to the entity that you're being appointed when you're being appointed to such position? We're thinking about this potential board member vis-a-vis the task of DFC. Whereas when you're appointing the Secretary of State, you're not really thinking about what kind of role they're going to play on the DFC. I mean, it's a much bigger portfolio. So just why would it, I mean, I get the formal argument. But why would it make sense to draw the line, you know, at the including this CEO as an ex officio appointee rather than including, you know, if it were available under the, I'm just bracketing that question. If it were available under the terms of statute. Why would it make sense not to include this CEO who's being appointed to this position and simultaneously to this board? Implicitly only, but simultaneously to this board, why would it make sense not to have that person on the pointed to such position side of the line? If I could, I'll go back to the text, not because I'm being formalist, but because I think it answers the question. So the relevant distinction that I think Congress through was not what I would say. Affirmative. The relevant distinction was between government members and non government members. And I think once we take a look at it that way and look through that lens, it makes sense why you would have a different scheme. And I think this is borne out by the text, because it says that the 4 appointees, and this shows that these are distinct from the other 4 members, the 4 direct appointees by statute cannot be employees or officers of the government. And that's in contradistinction with the 5 who we are, you are not part of a sunshine at majority, but our government members who were presidentially nominated and appointed to different positions. And I think that makes sense because once you have that economy of government members versus not, there are other accountability mechanisms that are already in place. And then on top of that, you can layer on top all the accountability measures in the bill that itself. But I think that that would be the response I would give is really helpful. That's exactly what I was perfect. There's something else. I think. Notice that for the, or should we call other agency? Board board members, they all have the authority to take that role on themselves or assign it to a designee. But the CEO does not and so. It makes sense that, you know, the secretary of state isn't necessarily going to be the 1 serving on the board because the statute says she, or he doesn't necessarily have to doesn't make it. As long as they're. Because the CEO doesn't position doesn't allow that. Doesn't that suggest that it really is. The 2 sides of the same coin for the job when they're appointed, they're appointed CEO. And you CEO means, you know, CEO equals board member. And you can't get out of using the designee. You will be a board member. It just comes as night follows day with being confirmed. As the CEO, I'm glad you asked that because that's exactly where I was going next. I think. Did you not at all? I think it actually cuts the exact opposite direction. Because that doesn't need provision for the secretary of state commerce. All of those other 4 government members, I think that unravels. Plaintiff's entire theory, because their theory is here. Well, those 4 individuals do not count towards a sunshine act majority. But if you look at the designee provision, all that requires, well, among other things, is that that doesn't need be presidentially nominated and Senate confirmed and that they have some job duty. And that appointment that relates the. That describes to a T, the deputy CEO of the. So, under plaintiff's theory, but the secretary of commerce could do is designate the deputy CEO, but under their theory, that would not count towards a sunshine majority. So, I think what that shows is Congress meant what it said and the Simon's decision really is the only administrable rule we've got here. It's a clear understanding that well, see, has taken the heart since 1976 or Simon's was decided in 81 and that understanding has been consistent. It's whether you are pointed directly to the board or serving doesn't use the word direct. It doesn't that's right. You're writing that in. Right. It says whether you are pointed to such position. Or whether you're serving my question is, aren't you necessarily. Simultaneously appointed to the board when you're appointed CEO. It just you can't you can't it's inextricable. No, and I think actually, let's get back 1 of the early questions. Just actually speaking on the ground, if we take a look and this is that page 20 of our brief, I think it's 9. If you take a look, actually, what those nominations and what the Senate is doing when it's confirming. If you look at the CEO, it's the nomination to be CEO. And if you look at the 4 direct appointees, as we call them, it says to be board member of the DFC. And that's another distinction. But getting back to the text. But if the if the president had chosen to word it more fulsomely. And put before the Senate CEO and board member that it can't be your position that that would have changed. Yeah, no, it wouldn't as a legal matter. I think it just reflects the common sense. Straightforward understanding from Simon Simon's all the way down. But I think if we really look at that red judgment lip. In a sense that that's the exact same argument you could make about the secretary of the Treasury, that there are these consequences. No, that's my point is you can't because it doesn't follow as night as day for any of the 4 cabinet positions or the or is not. But the the other specified other agency positions, it doesn't follow. That's why. I mean, it does seem curious that the president, if the president said, I am having you confirmed. I'm appointing you to be CEO and I am appointing you to the board. And the Senate votes and says, you are hereby confirmed to be CEO and confirmed to be a board member. Oh, actually, wouldn't that fit? I think actually, we take a look at the provisions for the office of CEO. If you look at the sunshine, just a straight, even that fits your reading of the sunshine. No, I don't think so, because it's appointed to such position. Yeah. Under my theory, it's if the judge just said of the president phrases the appointment as you're appointed to be CEO and you are appointed to be board member. And the Senate and its records and his vote says you are hereby confirmed to be CEO and you are hereby confirmed to be a board member. And the commission is signed to be CEO and board member. How does that not put them? I was curious as to why you said, of course, that wouldn't count for the Sunshine Act. It falls squarely within the language of the Sunshine Act. I don't think so. And I want to push back in two ways. So, one, I don't think the president would disregard the statutory text of Congress had. So, for example, if the nomination said CEO, GFC and other positions, I don't have anything to do with the bill that I don't think I don't understand what you're saying there at all. I'm not talking about anything that has nothing to do with the bill that I'm talking about. He's quite specific. And we are the president will have appointed and Senate will have confirmed and commission will have been signed. And we're going to say you all must have just been kidding. We're not going to count that. It meets your definition. He was appointed to such position and confirmed to such position, both board and CEO. I think we would have to go back to the statutory bill back and see what is the position that Congress created. Why do we have to go back to the build act? I'm reading the Sunshine Act. Well, because I think those two work in tandem. So the Sunshine Act says the Sunshine Act tells entities created by statutes, like the build act, whether you're in or out. I mean, you would you'd have to concede that in that hypothetical, which isn't before us, then that hypothetical with that explicitness, it would meet the Sunshine Act text. And you're trying to use the build act to undo that. Is that what you're telling me? I want to make sure I understand the hypothetical. I'm not sure, because what I understand the hypothetical to be doing is that the president would be going beyond nominating to a position that Congress didn't actually prescribe in the statute. And I think that would be the problem. I think what matters here is what Congress said, both in the. What do you mean in positions that Congress doesn't prescribe? As I understood, the hypothetical would be saying that the president would nominate CEO and then also add other things to the nomination. Not other things would say you are being appointed to. The position of CEO, and you're being appointed to. Board membership, and I think in that hypothetical, there would be a strong argument that the president might be flooding the congressional text, but I want to get back. And just reiterate, of course, as I think that's not this case, not flooding that that would be all I'm asking you is whether that would meet the Sunshine Act definition that would. I don't I don't know, maybe someone would have an argument that it was void of an issue as an appointment for some reason, but that doesn't mean it doesn't meet the Sunshine Act text as you read it. No, I think in my, if it's what I have an issue, that would be a serious problem. It could be a serious problem, but it would be what you're asking for into the Sunshine. Unless you mean the Sunshine Act when it says appointed to such position. Maybe not quite have an issue because you have all these things when there's erroneous appointments and things can still you guys are always arguing that can still credit the actions of the agency. So, I'm going to take away the issue, but maybe avoidable. It would meet the Sunshine Act definition would have been exactly what the text means. I want to be very careful. I'm not sure if I'm understanding the correct. But I think if the president says other things in the nomination, I don't know how that would take out under the Sunshine Act text. What I can tell you presidents have appointed people to 2 positions at the same time in the same document. Right and I think what that can happen, but what the Sunshine Act says is that may be true and this is the insight I think in the Simon's decision. It may be true that you are appointed to a position and there are other consequences or other positions that you will also be serving within the government. But statutorily, the appointment is to the position of the bill that CEO and that's born out in the subsection that creates the appointment process. For the position of CEO, which is in a different subsection from the appointment. That's a build back authority presidential authority. So I'm asking is textually looking at the Sunshine Act. It would meet that. I don't I don't need to fight the hypothetical. Maybe I'm just not understanding it. I think that the problem would be is we have the congressional text. We got the statutory text. It creates the position of CEO. It says in subsection D, it's distinct from. The board, because the CEO serves under the direction and is accountable to the board, which separates the 2 offices. And the only authorized appointment within the bill that the Congress prescribed. Is to the position of CEO and there are downstream consequences, just like Congress authorized for appointments to the board directly. I must assume this CEO appointee is coming from outside the government. Well, I think that that's also something that Congress prescribed and maybe this maybe we were talking about 1 person being appointed to 2 positions. Yes. Right. Okay. Then if I understood that Congress says. Those 4 board members can't be members of the government, so I think by statute that hypothetical just wouldn't work because it would be I'm just trying to understand. Your position on this, right? And I think there are other ways Congress could have done that. So apologies if I misunderstood the hypothetical. I think my problem was the statute foreclosed that precise hypothetical. But it certainly could be the case that there are actually reinforces your point. But yes, but there are other ways that Congress could have structured this statute or other statutes in order to provide a Sunshine Act. Majority and I think after Simons, if you wanted a blueprint on how to create an agency without a Sunshine Act requirement. This would be it. This would be the text we'd use as the Millennium Challenge Board. OLC opinion reflects in all material respects. These are the same and I think the same conclusion should apply and it flows directly from Simons. I just have 1 little follow up question on the harmless error point and on your 15 on page 29 of your brief where you're talking about. And you say, you know, to the extent and I realize they haven't preserved this, but to the extent that plaintiff's objective would have been to persuade the DFC to voluntarily adopt the same regulatory requirements. You say they might petition for new rulemaking. Well, we all know that petitioning for a new rulemaking is very uphill battle. Whereas if there were already convened by notice and comment rulemaking on the repealer of the Central Act regulations. There's no reason to think that the that that noticed rulemaking would somehow be statutorily limited to actions authorized by the Sunshine Act. Is there or is there any authority on that point? Yeah, I, again, I want to bracket all of this. This hasn't I understand. I think there is there would be a serious question whether you could do that because the Sunshine Act provisions that require you to promulgate regulations say entities that are subject to these. Right. But when you're convening a notice and comment to repeal that, first of all, by hypothesis, you're not sort of doing so under the Sunshine Act. You have to do so under the bill that because essentially, you know, under your theory, the Sunshine Act no longer authorizes this rulemaking only authorizes taking it away. So I just I'm wondering if there's any authority work conceptually how to begin to look for something that would it would say it wouldn't, you know, yes, they haven't preserved it. But had they preserved it, how do we think about that scope question? I think we would love to see if there's authority for the agency to conduct that type of rulemaking to impose these types of regulations. And I think I've looked, I didn't see any in the bill back, and that's borne out, I think, by the original rulemaking, which, of course, the Sunshine Act itself with respect to that. I started with the with the provision, whatever it was B1C, which does talk about doesn't talk about rulemaking, but it talks about needing to have policies. Right. And then we separately have to ask about rulemaking. And is it a legislative? Exactly. And then getting back to those comment, I guess also harmlessness. I think this shows the harmlessness because B1C and 9614 as well, which has another requirement. What Congress did is it created a new scheme with new accountability provisions. So it's not a Sunshine Act, but that's a separate question. Yes, there's other accountability. Then I think potentially separate question is, even if you're totally right on the statutory issue, was it just an error that the DFC didn't do it? But I don't want to be the dead horse. You've been very responsive. It's very helpful. No, it's a fair question. It hasn't been preserved. I think it would be a tougher case. I still think that would be harmless, but it's just not what we have here. It's not what the district court passed on or had an opportunity to pass on. But I do want to just reiterate, I think we would have to look for statutory authority to enact Sunshine Act regulations. And you very careful in your brief did not assert that there was a lack of such statutory authority, which I was appreciative that that was a careful, carefully written. I will, I will say, I think it's an open question and that is why a petition to open rulemaking, I think, would be the right result. And of course, the Hadson decision, I think, bears that out as well. I just ask a quick one. Sorry. It's a very quick timing question. At the time they repealed the Sunshine Act regulations where they're 9613. B1C and C public hearings. I don't know if they needed many rules for that, but any policies for that, but at least the B1C, were those already in place or did those come in place after they repealed? I want to be careful. It's my understanding. The B1C policies. I think there was discussions going on with stakeholders. I think those are finalized in December of 2020. And then the repeal, of course, was April of 2020. So, I think they were, they came in. I think they came in afterwards. Okay. But of course, there hasn't been any. Can we find those somewhere? Yes, I think we have the permalinks. Okay. All right. And then just what is your position about whether or not the CEO is exhibition? I think he's ex officio in the same way that Simon's referred to that, that language. What ex officio means is you are serving by virtue of another government office. And I think that's what Black's Law Dictionary says. We cited that in our brief as well. If you wanted to cite for Simon's, I think page 241 says that, and I'll quote here, board members serve ex officio by virtue of their appointment concededly by the president with the advice and consent of the Senate to other government offices. But I think that's the meaning here. And offices there doesn't mean agencies. Absolutely. And I think that that's borne out with the Millennium Challenge Corporation, where we have the same thing here. You've got a CEO who does not count toward the Sunshine Act majority, the CEO, the same entity, but is appointed to the position of CEO and not to the position of the board directly, not appointed to such position for such purposes. And just back to the quickly on the issue of harmless error. Do you consider that a procedural rule or legislative rule? Yes, so we consider it to be a procedural rule. I think that's that's the best reading of it. I think if it's not interpretive rule, we made all those arguments in the district court, and I think wisely the district court noted it didn't have to decide the question when we got the approval. Positive in our favor, I will say those arguments, I think there are other barriers to relief. So, if, for some reason, the court disagrees on the, on the legal question of the Sunshine X. Look, ability, the proper reports would be to remand so that the district court could sort out those other arguments that we've made that are threshold barriers to relief. Any questions. Okay, Mr snake, we'll give you 2 minutes for rebuttal. Thank you, your honors. I do not have the. Public hearing provisions, and I will have to supply that with a letter to the court, but it is absolutely false. That the bill that Sunshine X plus our brief gets into a lot of detail on by the Sunshine X provides a lot more transparency, but I want to go back. To this ex officio term, it's not in any of the statutes. It's a term that Simon's began to use. And it actually has engendered some of the confusion that we've had today here. And I want to particularly refer to the analysis that both the majority in Simon's and judge wall and Simon's made with regard to legislative history. I take the majority of you on that, that it provided a little bit of a glimpse, but what they both agreed with. Was that if it wasn't going to be an agency subject. To the sunshine act, it was likely going to be an advisory committee. Like the National Security Council, and therefore, I think the exemption. In the bill act, the is hugely important. It was Congress saying this is not an advisory committee. They do not have to comply with the advisory committee. Rules and the fact that ex officio is this dangling term that's being used on a lot of different contexts. I think has been part of the problem. Never did Simon say that the CEO of a corporation that serves on the board. And that is, as I said, openly talked about other agencies all the time, and they made a big deal. Has a definition of agency, so it could have just been referring to the sunshine act definition of agency. So, but it's ex officio, which is extra to the office. Are you arguing that the CEO position is not a distinct office within the meaning of that additional term ex officio? We're arguing that the office has as an inextricable part of it. That's just a job duty offices have job duties. And being on the board is a job duty. So it's actually not. Outside your office, it's part of your office. So, when the ex officio is outside the office, but if then the CEO is nominated to such position and such position includes the board, that's not some separate thing that occurs. It's this thing that happens when the CEO automatically, and the fact that the board hiring support staff is part of. I'm assuming that's allowed here for this CEO must be some hiring authority must be some things like that buying office supplies. You aren't appointed to and confirmed to the person in charge of office supplies. It's just a job duty. I just don't know why Congress would repeal 1 transparency statute and not the other that I'm still I am still stuck on that. And Hudson, by the way, was a case where the underlying statute was repealed. The Sunshine Act was never repealed here. So, I think a very, that's a very different case. Your honor, I think the Sunshine Act, just on the issue of exemptions and provisions, we think that cuts in our favor. Because if, indeed, the agency is going to claim a FOIA-like exemption, which is what the Sunshine Act has, they have to actually identify it. Where now, we'll never know whether it was exempt. And in fact, there's been a huge identified liquefied natural gas projects, coal projects that were voted on by the DFC and never in the agenda that was posted to the public. Kate DeAngelo's supplemental declaration gets into that. So, the Sunshine Act really does matter. And the fact that Congress said you'll have 2 public hearings doesn't mean that Congress meant that there'll be no sunshine at those 2 public hearings. We think Congress really wanted to continue what OPIC was already doing. The little sliver that came over from USAID into the new agency, from 1999 until 2015, spent about $4 billion. The DFC spent $7 billion alone last year. So, this was a very small piece of AID. It really was mostly OPIC to DFC. Thank you very much. The case is submitted.
judges: Millett, Pillard, Childs